**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| PURSHE KAPLAN STERLING INVESTMENTS, INC., JOHN PETER PURCELL, KATHERINE FLOUTON, LISA LAFOND, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | No. 5:20-cv-00878 |
| TONI CAIAZZO NEFF, | : : | |
| Defendant. | : : | |

**O P I N I O N**
**Plaintiffs' Motion for a Preliminary Injunction, ECF No. 7 — Granted**

Joseph F. Leeson, Jr.                                                September 9, 2020
United States District Judge

## I.  INTRODUCTION

Plaintiffs Purshe Kaplan Sterling Investments, John Peter Purcell, Katherine Flouton, and Lisa Lafond filed this complaint for a declaratory judgment and motion for a preliminary injunction. The complaint stems from the Defendant, Toni Caiazzo Neff, filing a Financial Industry Regulatory Authority (FINRA) arbitration the Plaintiffs believe Neff waived because she filed a lawsuit in this Court eighteen months prior to filing the FINRA arbitration. Neff's federal lawsuit ended on a motion to dismiss. The issue presented is unique to the Eastern District of Pennsylvania and the Third Circuit as this Court must determine whether Neff waived her right to a FINRA arbitration and, thus, be enjoined from continuing the arbitration. For the following reasons, the motion for a preliminary injunction is granted.

## II.  BACKGROUND

Purshe Kaplan hired Neff as a compliance employee in March of 2014. *See* Pl. Compl. ¶ 15; ECF No. 1. Nearly four years later, Purshe Kaplan terminated Neff's employment. *Id.* at ¶ 16. Approximately five months after being terminated, on May 1, 2018, Neff filed a complaint in this Court against Purshe Kaplan, Purcell, LaFond, and Flouton. *Id.* at ¶¶ 16, 17. Neff amended her complaint on September 14, 2018, and included claims of: (1) retaliation for whistleblowing for alleged violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act, (2) wrongful termination in violation of Pennsylvania public policy,  (3) breach of Pennsylvania's implied covenant of good faith and fair dealing, and (4) intentional infliction of emotional distress in an alleged violation of Pennsylvania law. *Id.* at ¶ 17. Purshe Kaplan, Purcell, LaFond, and Flouton moved to dismiss the claims on September 28, 2018. *Id.* at ¶ 21.

On July 31, 2019, while the motion to dismiss was pending in this Court, Neff filed a praecipe in Pennsylvania state court alleging claims of libel, slander, and misrepresentation based upon statements made by Plaintiffs in an *Investment News* article relating to the pending federal lawsuit. *Id.* at ¶ 22.

On August 8, 2019, this Court granted the motion to dismiss. *See Neff v. PKS Holdings, LLC*, No. 18-cv-1826, 2019 WL 3729568 (E.D. Pa. Aug 8. 2019). This Court ruled it did not have personal jurisdiction over all the defendants except for Purshe Kaplan and Flouton. As to the claims against Purshe Kaplan and Flouton, this Court determined: (1) Neff's Dodd-Frank Act claim could not proceed because the statute requires a plaintiff to report the alleged actions to the SEC, which Neff did not do; (2) Neff's wrongful termination claim could not proceed because Neff could not point to any statute that required her to report her employer's alleged violations to securities laws to FINRA; (3) Neff's claim of breach of Pennsylvania's implied covenant of good

faith and fair dealing claim could not procced because Neff was an at-will employee; and (4) Neff's intentional infliction of emotional distress claim could not proceed because allegations of wrongful termination cannot justify a claim for intentional infliction of emotional distress. *See id*.

Approximately three months after this Court dismissed Neff's federal law claims, she withdrew without prejudice her praecipe in Pennsylvania state court. Pl. Compl. ¶ 22. However, Neff filed a Statement of Claim with FINRA on December 19, 2019. *Id*. at ¶ 28. In Neff's Statement of Claim, she claims Purshe Kaplan retaliated against her by termination because she sought to inform FINRA of violations and that Purcell defamed her character by making statements about her to *Investment News* on August 1, 2018. *Id*.

Plaintiffs filed this complaint for declaratory judgment on February 14, 2020, and a motion for a preliminary junction on March 10, 2020. *See* ECF Nos. 1 and 7. Plaintiffs sought, and were granted, oral argument on this matter, scheduled for June 29, 2020; however, to due to the COVID-19 pandemic, oral argument was canceled. *See* ECF No. 19. The matter is now ready for review.

## III. LEGAL STANDARDS

### A.  Declaratory Judgment Act

Plaintiffs' complaint is for declaratory judgment. The Declaratory Judgment Act (DJA) permits the federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Although the DJA "enlarged the range of remedies available in the federal courts, [it] did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

To present a valid cause of action, Plaintiffs' complaint must meet two threshold requirements: (1) the complaint must satisfy the elements of a statute which confers subject matter jurisdiction to this Court, such as 28 U.S.C. § 1331 or § 1332, independent of the Declaratory Judgment Act; and (2) Plaintiffs' complaint must present a justiciable case or controversy. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." ); *Federal Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 351-52 (3d Cir. 1986) ("Every case brought under the [DJA] still must fall within federal jurisdiction and present a justiciable issue. In the statutory language of § 2201, the remedy may only be granted whenever there is an 'actual controversy' based upon independent jurisdictional grounds.").

As to the first threshold requirement, Plaintiffs complaint avers this Court may exercise subject matter jurisdiction pursuant to § 1332 because (1) the parties are diverse in citizenship, and (2) the amount in controversy exceeds $75,000. Regarding the citizenship of the parties, Plaintiffs contend complete diversity as Purshe Kaplan is incorporated with its principal place of business in New York, Purcell is domiciled in New York, Flouton is domiciled in New York, LaFond is domiciled in New York, and Neff is domiciled in Pennsylvania. Additionally, the dispute exceeds $75,000 because of the lost earning potential of Neff as Plaintiffs admit she earned over $100,000 yearly.  Thus, diversity amongst the parties is complete and the amount of controversy is above the $75,000 threshold.

For the second threshold pleading requirement, the justiciability requirement is that each case decided by the federal courts must be a "case or controversy" - an action which by its nature is concrete and ripe. *Federal Kemper Ins. Co.*, 807 F.2d at 350. The Supreme Court "succinctly described" this requirement:

> A "controversy" in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching upon the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id*. (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-42 (1936)).

Here, a justiciable controversy exists because Neff initiated the FINRA arbitration before Plaintiffs brought this action. Accordingly, this Court has jurisdiction through diversity and will exercise such jurisdiction.

### B.  Preliminary injunction standard

The standard for granting a preliminary injunction requires a plaintiff seeking such relief to make a "clear showing" that "[1] he is likely to succeed on the merits, that [2] he is likely to suffer irreparable harm in the absence of preliminary relief, that [3] the balance of equities tips in his favor, and that [4] an injunction is in the public interest." *Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 197 (3d Cir. 2014) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008)); *see also Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).

## IV. ANALYSIS

### A.  The likelihood of success on the merits

Courts in the Third Circuit have long decided questions of waiver based on litigation conduct instead of referring the issue to an arbitrator. *See*, *e.g.*, *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000); *Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222, 233 (3d Cir. 1997); *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir. 1995); *Hoxworth v. Robinson, Blinder & Co., Inc.*, 980 F.2d 912, 925–27 (3d Cir. 1992); *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783–84 (3d Cir. 1975). The Third Circuit has continued to resolve waiver claims based on litigation conduct, *see Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 596–98 (3d Cir. 2004), albeit without analysis, and district courts in the Third Circuit followed suit. *See*, *e.g.*, *Yanes v. Minute Maid Co.*, No. 02–2712, 2006 WL 521541, at *2–*5 (D.N.J. March 2, 2006); *Expofrut S.A. v. M/V ACONCAGUA*, 280 F. Supp. 2d 374, 376–77 (E.D. Pa. 2003), *aff'd*, 110 F. App'x 224 (3d Cir. Sept. 28, 2004) (unpublished).

To determine waiver, the Third Circuit states prejudice is dispositive and utilizes a factor test to determine prejudice. In *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992), the Third Circuit set forth "a nonexclusive list of factors relevant to the prejudice inquiry." *Ehleiter v. Grapetree Shoes, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007). The *Hoxworth* factors are:

> [1] the timeliness or lack thereof of a motion to arbitrate . . . [; 2] the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; [3] whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; [4] the extent of its non-merits motion practice; [5] its assent to the court's pretrial orders; and [6] the extent to which both parties have engaged in discovery.

*Hoxworth*, 980 F.2d at 926–27 (internal citations omitted). As is evident by the emphasis on these factors as a nonexclusive list, not all the factors need be present to justify a finding of waiver, and "[t]he waiver determination must be based on the circumstances and context of the particular case." *Doctor's Assocs v. Stuart*, 85 F.3d 975, 981 (2d Cir. 1996).

The Third Circuit has consistently emphasized that "prejudice is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct." *Ehleiter*, 482 F.3d at 222 (quotations and citations omitted). As the *Hoxworth* factors themselves make clear, the concept of prejudice includes not only "substantive prejudice to the legal position of the party claiming waiver," but also extends to "prejudice resulting from the unnecessary delay and expense incurred by the plaintiffs as a result of the defendants' belated invocation of their right to arbitrate." *Id*. at 224. For example, the Third Circuit stated in *Hoxworth* that:

> [W]here a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing arbitration may more easily show that its position has been compromised, i.e., prejudiced, because under these circumstances we can readily infer that the party claiming waiver has already invested considerable time and expense in litigating the case in court, and would be required to duplicate its efforts, to at least some degree, if the case were now to proceed in the arbitral forum. Prejudice of this sort is not mitigated by the absence of substantive prejudice to the legal position of the party claiming waiver.

*Hoxworth*, 980 F.2d at 926 (internal quotations and citations omitted). In other words, the investment of considerable time and money litigating a case may amount to sufficient prejudice to bar a later-asserted right to arbitrate. *Nino v. The Jewelery Exchange, Inc.*, 609 F.3d 191, 209 (3d Cir. 2010).

This issue is unique to the Eastern District and the Third Circuit as both venues have not determined whether a plaintiff can waive a FINRA arbitration and then be subsequently enjoined from continuing in the arbitration; thus, Plaintiffs cite to a similar case in another district to

support their position. In *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1231 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016), the court found that the defendant waived their right to FINRA arbitration after litigating the case in federal court for approximately a year. The court further found this one-year delay would prejudice the plaintiff because the plaintiff would need to expend more resources to relitigate claims previously determined by the court. *Id.* Thus, in an action for declaratory judgment and a motion for preliminary injunction, the court granted the preliminary injunction and restrained and enjoined the defendant from pursuing his actions in the FINRA arbitration. *Id.* at 1237. *See Morgan Stanley & Co., Inc. v. Seghers*, No. 10-5378, 2010 WL 3952851 (S.D.N.Y. Oct. 8, 2010) (granting motion to enjoin FINRA arbitration on ground the defendant waived arbitration rights by litigating claims in federal court).

Here, in analyzing the first *Hoxworth* factor, timeliness, Neff waited eighteen months to pursue her FINRA arbitration.  An eighteen-month delay is significantly longer than the cases in which the Third Circuit has found no waiver, *see Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir. 2004) (38 days); *PaineWebber*, 61 F.3d at 1069 (two months); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir. 2000) (one-and-a-half months); *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783–84 (3d Cir. 1975) (arbitration motion made "immediately" after removing case to federal court), and sits at the high end of the cases in which the Third Circuit has found waiver. *See Gray Holdco*, 654 F.3d at 454 (ten months); *Hoxworth*, 980 F.2d at 925 (11 months); *Nino*, 609 F.3d at 210 (15 months); *Ehleiter*, 482 F.3d at 223 (4 years); *In re Pharmacy Ben. Managers Antitrust Litigation*, 700 F.3d 109 (3d Cir. 2012) (ten months). This analysis also includes *Couch*, where in substantially similar

circumstances to this case the court found waiver after a ten-month delay. Accordingly, this factor weighs in favor of waiver.

The second *Hoxworth* factor is the extent to which the party seeking arbitration has contested the merits of the opposing party's claims. Here, Neff opposed Plaintiffs' motion to dismiss in this Court, and the motion to dismiss directly addressed the merits of her claims. While this Court dismissed some claims due to lack of personal jurisdiction, for those claims that this Court possessed personal jurisdiction, it dismissed the claims with prejudice as amendment would be futile. Thus, Neff directly contested the merits of Plaintiffs' arguments on her claims. This is significantly more activity on the merits than in cases in which the Third Circuit found no waiver, *see Palcko*, 372 F.3d at 598 (motion to dismiss but only for insufficient service of process); *PaineWebber*, 61 F.3d at 1069 (no briefing on the merits); *Gavlik*, 526 F.2d at 783–84 (no contest on the merits), and appears to be at least comparable to the cases in which the Third Circuit has found waiver. *See Nino*, 609 F.3d at 210–11 (no motions on the merits); *Ehleiter*, 482 F.3d at 223 (motion for summary judgment); *Hoxworth*, 980 F.2d at 925–26 (motion to dismiss for failure to state a claim, and opposition to motion for class certification); *Gray Holdco*, 654 F.3d at 456 (motion for preliminary injunction with evidentiary hearing, and opposition to motions to dismiss). This factor thus weighs in favor of finding waiver.

The third factor is whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to filing the motion to compel. Here, Neff initiated the original claim in this Court without reference to arbitration. After being dismissed in this Court, the facts do not indicate Neff provided notice before initiating a FINRA arbitration. The facts of this case are thus stronger than the cases in which the Third Circuit has found no waiver, *see Palcko*, 372 F.3d at 598 (requested arbitration from opposing party before filing motion to compel);

*PaineWebber*, 61 F.3d at 1065 (objected that claims were subject to arbitration 21 days after the filing of the plaintiff's state court complaint); *Wood*, 207 F.3d at 680 (raised arbitration in joint discovery plan before bringing motion to compel), and are comparable to the cases in which the Third Circuit has found waiver. *See Nino*, 609 F.3d at 211 (included mandatory arbitration as one of ten affirmative defenses in its answer); *Ehleiter*, 482 F.3d at 210–11 (no advanced notice); *Gray Holdco*, 654 F.3d at 457 (no advanced notice). This factor, too, weighs in favor of finding waiver.

The fourth *Hoxworth* factor is the extent to which the party seeking arbitration engaged in non-merits motion practice. Here, Neff did not engage in non-merits motion practice, she only opposed the motion to dismiss. In any event, this factor is not an absolute requirement, and the Third Circuit has found waiver even where no significant non-merits motion practice occurred. *See Gray Holdco*, 654 F.3d at 456. Ultimately, however, this factor weighs slightly in favor of waiver or is, at worst, neutral.

The fifth factor is the party's acquiescence in a court's pretrial orders. Cases in which the Third Circuit has found no waiver generally were not litigated long enough to feature any acquiescence in pretrial orders. *See PaineWebber*, 61 F.3d at 1065; *Gavlik*, 526 F.2d at 783–84; *but see Wood*, 207 F.3d at 680 (filed a joint discovery plan).  Thus, the fifth factor is in favor of non-waiver. However, this factor is vastly outweighed by the first three factors.

Lastly, the sixth and final factor is the extent to which the parties have engaged in discovery. No discovery took place, which is identical to those cases in which no waiver was found. *See Palcko*, 372 F.3d at 598; *PaineWebber*, 61 F.3d at 1069; *Wood*, 207 F.3d at 680; *Gavlik*, 526 F.2d at 784. This factor is in favor of non-waiver. Nonetheless, similar to the fifth factor, this factor it outweighed by the first three factors.

In analyzing the factors as a whole, it appears Neff waived her claim to arbitrate. Neff waited eighteen months to bring her FINRA arbitration claim, and in that in eighteen-month period she brought similar claims to this Court, with her claims being dismissed with prejudice against the individuals whom the Court determined were subject to personal jurisdiction. Neff additionally attempted to bring claims in state court before voluntarily dismissing those claims. Neff's activity is "inconsistent with an intent to arbitrate." *Hoxworth,* 980 F.2d at 926. Rather, after counting her state law claim, Neff seeks a third bite of the apple with her FINRA arbitration. Neff is precluded from her third bite. Similar to *Couch* where the court found that the defendants waived their right to FINRA arbitration after litigating the case in federal court for approximately a year; in this instance, Neff waited eighteen months before initiating her FINRA arbitration. Neff's own conduct caused her waiver. *See Hoxworth,* 980 F.2d at 925 (holding the that defendants had waived any right they may have had to arbitration by actively litigating their case for almost a year before filing their motion to compel arbitration); *see also Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (defendant waiving right to compel arbitration by actively litigating entire matter); *National Found. for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772 (D.C. Cir. 1987) (defendant waiving right to compel arbitration after invoking the litigation machinery); *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986) (substantially invoking the litigation machinery qualifies as prejudice that is essence of waiver). Accordingly, Neff's waiver presents a likelihood of success on the merits.[1]

---

[1]     As the Court determined Neff waived her arbitration, it need not analyze Plaintiffs other argument of collateral estoppel.

**B.  Likelihood to suffer irreparable harm**

The irreparable harm requirement for a preliminary injunction is met if a plaintiff demonstrates a significant risk that it will experience harm that cannot adequately be compensated for after the fact by monetary damages. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir. 2000). As for irreparable harm and arbitration, forcing a plaintiff to defend an arbitration constitutes irreparable harm when that arbitration was waived by the prior litigation initiated by the defendant. *Bear, Sterns, & Co. v. Lavin*, No. 92–6785, 1993 WL 56061, at *4 (E.D. Pa. Mar. 1, 1993); *see also Couch*, 659 F. App'x at 406 (holding that forcing a party to arbitration when the right to arbitrate was waived would cause irreparable harm).

Here, Plaintiffs would likely suffer irreparable harm if the FINRA arbitration continues. Neff previously made the decision to litigate her case in this Court, failed, waived her arbitration by doing so, and now seeks retribution in the FINRA arbitration. If the FINRA arbitration continues, Plaintiffs would be forced to relitigate these claims. Plaintiffs were victorious in the motion to dismiss in this Court. Accordingly, Plaintiffs are likely to suffer irreparable harm.

**C.  The balance of equities**

The balance of equities tips in Plaintiffs' favor and there will be no greater harm to the nonmoving party. Neff opted to choose litigation rather than arbitration and that was her prerogative. To force Plaintiffs to partake in the FINRA arbitration after Neff allegedly waived her rights by litigating her issues in this Court would not be equitable. As the Third Circuit has previously held, the injury Neff might suffer if an injunction were imposed is discounted by the fact that Neff brought that injury upon herself. *See Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 806 (3d Cir. 1998) ("The self-inflicted nature of any harm suffered by [the party opposing the injunction] also weighs in favor of granting preliminary injunctive

relief."); *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) ("By virtue of this recalcitrant behavior, the [party opposing the injunction] can hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself."). Neff must accept the consequences of her strategy. Accordingly, the balance of equities tips in Plaintiffs' favor.

### D.  The public interest

Lastly, the public interest favors such relief. Forcing parties to arbitrate claims that they have no duty to arbitrate "would only serve to complicate and extend the proceedings. This does not serve any public interest." *Couch*, 659 F. App'x at 406.

## V.    Conclusion

For the reasons stated above, Plaintiffs' motion for a preliminary injunction is granted. Neff is restrained and enjoined from pursuing her FINRA arbitration until the Court resolves the case. Plaintiffs are relieved from posting a bond because the balance of a potential hardship each party would suffer as a result of the preliminary injunction weighs overwhelmingly in favor of Plaintiffs. *See Temple Univ. v. White*, 941 F.2d 201, 219 (3d Cir. 1991) (recognizing that a district court has the discretion to waive the Rule 65(c) bond requirement where a balance of the potential hardship to each party would suffered as a result of the preliminary injunction weights overwhelmingly in favor of the party seeking the injunction).

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge